UNITED STATES, Appellee

v.

HAYDEN BLACK, Private First Class, U. S. Army, Appellant

3 USCMA 57, 11 CMR 57

---

No. 1589

Decided July 10, 1953

Lt Col George M. Thorpe, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and Lt Col Thayer Chapman, U. S. Army, and 1st Lt Richard L. Brown, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted by a general court-martial in Korea of the premeditated murder of Private James Lewis and the unpremeditated murder of Private Gerald F. Kirchner in violation of Article 118, Uniform Code of Military Justice, 50 USC § 712.' He was thereupon sentenced to a dishonorable discharge, total forfeitures and confinement at hard labor for life. Intermediate appellate agencies have approved and affirmed the findings and sentence. We granted the accused's petition for review to consider the sufficiency of the law officer's instructions.

The law officer outlined the essential elements of the offense of premeditated murder describing unpremeditated murder as a lesser included offense thereof and outlined its essential elements. Pre-

meditation was defined and the elements of self-defense were explained to the court. The accused raises no contention respecting the sufficiency of these instructions nor is such question presented by the record. The main contention of the accused is that voluntary manslaughter was reasonably raised by the evidence and the law officer's failure to instruct upon the essential elements thereof constituted reversible error.

The nature of the question requires a complete exposition of the facts presented to the court-martial.

On the morning in question, the accused and several members of his organization, including the ▮▮▮▮▮▮ victims, had gathered around a fire built on the reverse slope of a hill they were defending. A discussion of an incident

58

of the preceding evening resulted in an argument between the accused and the deceased, Private Lewis, during the course of which the accused said to Lewis "I have eight rounds for you in my M-1." When the others in the group began joking about the incident the accused withdrew to his bunker, procured his rifle, and returned to the group with the weapon at sling arms. As he approached he brought it to port arms and someone called out "Look out Lewis." As the latter turned, the accused fired one shot which entered Lewis's right chest, and, emerging from the rear of the left chest, struck the deceased, Private Kirchner, in the abdomen. Immediately after the shooting the accused went to the side of Kirchner, who had fallen to the ground, and said "Sorry buddy, it was not meant for you, it was meant for Lewis." When the victims had been removed from the scene, a platoon sergeant said to the accused "You are going to have to pay for that man's life." To this the accused replied "Lewis kicked me in the mouth." Both Lewis and Kirchner died as a result of their wounds.

Testifying in his own behalf, the accused asserted that on the night preceding the fatal incident he and Lewis were alternate sentinels guarding their unit's front line position. When Lewis failed to relieve him at the appointed time, the accused was required to remain on guard for an additional two-hour period. When Lewis awakened the accused, the accused protested because of Lewis's earlier failure to perform his duties and was thereupon kicked in the face and threatened with a knife. He then remained on guard for approximately six consecutive hours. When the incident was discussed the following morning about the fire, Lewis declared that if the accused was not removed from his foxhole he would break his neck, or the accused would break his. Considering this as a joke the accused returned to his bunker to obtain some sugar. While there he took his rifle, slung it over his shoulder, for in the front line men normally carry their weapons at all times, and returned to the fire. As he neared the group Lewis jumped at him and because the accused was frightened, he shot Lewis.

In United States v. Sylvester Clark (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952, this Court decided that the obligation to instruct upon lesser included offenses arises only if reasonably raised by the evidence. The lesser included offenses of the crimes of premeditated murder and unpremeditated murder are fully described in Appendix 12, Manual for Courts-Martial, United States, 1951. Since the deaths of two men resulted from the actions of the accused, we eliminate from our consideration offenses involving assault. Negligent homicide is also excluded, for the conduct of the accused was intentional and accompanied by the intent to take life. It is also clear that involuntary manslaughter was not in issue for the intentional taking of life, necessarily precludes culpable negligence. The only remaining possibility, and the main contention of the defense, is that the facts in this case fairly raised the issue of voluntary manslaughter. The premise of this contention is the assertion that the fear experienced by the accused when Lewis leaped at him, conditioned as it was upon the events of the preceding evening and the threats made at the fireside, was sufficient to arouse the heat of passion, reducing the homicide to voluntary manslaughter.

Article 119 of the Uniform Code of Military Justice, 50 USC § 713, provides:

"(a) Any person subject to this code who, with an intent to kill or inflict great bodily harm, unlawfully kills a human being in the heat of sudden passion caused by adequate provocation, is guilty of voluntary manslaughter. . . ."

The distinguishing elements of this offense are *heat of passion,* and, *adequate provocation.* Under the provisions of this Article an unlawful killing will be reduced to voluntary manslaughter only when these elements co-exist, and neither passion alone, however violent, nor provocation alone, however adequate, will suffice. See McHargue v. Commonwealth, 231 Ky 82, 21 SW 115; People v. Russell, 322 Ill 295, 153 NE

389. In explanation of these elements paragraph 198a of the Manual, supra, provides:

"The provocation must be such as the law deems adequate to excite uncontrollable passion in the mind of a reasonable man, and the act of killing must be committed under and because of the passion. The provocation must not be sought or induced as an excuse for killing or doing harm. If, judged by the standard of a reasonable man, sufficient cooling time elapses between the provocation and the killing, it is murder, even if the passion of the particular accused persists."

Assuming the truth of each statement made by the accused in explanation of his actions, we conclude that neither of the distinguishing factors of voluntary manslaughter were shown. While the assault and accompanying threats of further violence made by Lewis during the night preceding the shooting were wholly unjustified and calculated to arouse the passions of a reasonable man, the danger to the accused terminated when he complied with Lewis's demands. Any threats made by Lewis the following morning were by their very terms conditioned upon future events and were unaccompanied by any action designed to carry them out. There remains, then, only the claim that Lewis jumped the accused, thus precipitating the fatal shooting. Without reference to the other facts such a move was insufficient to excite in the mind of a reasonable man an uncontrollable passion. Lewis was unarmed; there were nearby several individuals upon whom the accused could call for assistance; there was present at least one noncommissioned officer charged with the responsibility of maintaining order. Under these circumstances the action of Lewis did not constitute adequate provocation to justify the use of a deadly weapon.

". . . Mere words, however gross or insulting, will not justify taking life, and where a homicide is committed under no other provocation than irritating language, the killing will be murder in law. The same is true of gestures, unless they be of a character manifestly threatening to life—as where a pistol or other deadly weapon is evidently attempted to be drawn and used; in such case the crime committed may be reduced to manslaughter. In any case where the provocation, though material, is not excessive, as where a bare trespass is committed on property other than a dwelling, or where the person is assailed but not seriously . . . , the law will in general hold the killing to be not manslaughter but murder." [Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, page 675.]

Considering the movement of Lewis in its relation to all the other facts present, as we are required to do, the absence of a reasonable basis for concluding that voluntary manslaughter was in issue is crystal clear. After the argument had subsided, the accused withdrew to his bunker, armed himself with a weapon and returned to the group carrying the lethal instrument in a position of readiness. Before the victim could make his purpose clear, the accused fired and killed him. These actions speak louder than any words. They are susceptible of but one meaning: that the accused conceived the intent to kill his victim, procured the means, and carried his intention into execution. In terms of legal connotation this is premeditated murder and nothing else. United States v. Ginn (No. 263), 1 USCMA 453, 4 CMR 45, decided July 10, 1952. The defense contention, however, would have us ignore this obvious conclusion, and resolve rather that the "fear" experienced by the accused was alone sufficient to reduce an unlawful killing to voluntary manslaughter upon some theory of "imperfect self-defense." A discussion of this theory is purely academic. Suffice it to note, that in each case relied upon by the accused in support of his theory, the distinguishing elements of *heat of passion* and *adequate provocation* were present. Thus the circumstances were sufficient to reduce the killings to voluntary manslaughter.

In the military system, and in civilian jurisdictions generally, self-defense is

a complete justification of homicide. When self-defense is established, no crime is committed. Heat of passion caused by adequate provocation is a mitigating circumstance, which will reduce an unlawful homicide from murder to voluntary manslaughter. The adoption of any theory of "imperfect self-defense" unnecessarily confuses the legal situation presented by an otherwise clear statement of facts, and therefore we reject its use entirely.

The final contention of the accused, asserted under the specification alleging the unpremeditated murder of Private Kirchner, is that in the absence of ill-will or animosity towards Kirchner, and of an intent to kill him, the issues of involuntary manslaughter and negligent homicide were reasonably raised by the evidence, and failure to instruct thereon constitutes reversible error. The Supreme Court of North Carolina considered a similar contention in State v. Burney, 215 NC 598, 3 SE2d 24, and ruled that one who kills a person in a malicious effort to kill another is guilty of murder. Wharton on Homicide, 3d ed., section 359, page 574, indicates that this rule is almost universally accepted. Under this rule, clearly applicable to courts-martial, the accused could have been charged with the premeditated murder of Kirchner. Therefore, the defense contention is without merit.

The evidence did not reasonably raise any issue of a lesser included offense. Accordingly, there was no necessity to instruct thereon. Consequently, the instructions of the law officer were sufficient.

The decision of the board of review is affirmed.

Judges LATIMER and BROSMAN concur.