UNITED STATES, Appellee,

v.

Andrew M. WILSON, Airman First
Class, U.S. Air Force, Appellant.

No. 50853.
ACM 24182.

U.S. Court of Military Appeals.

April 25, 1988.

For appellant: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel Leo L. Sergi, Major Kathleen G. O'Reilly* (on brief); *Captain Laurence M. Soybel, Captain Deborah J. Hudspeth.*

Appellee: *Captain Marc Van Nuys* (argued); *Colonel Kenneth R. Rengert, Major Robert E. Ferencik, Jr.* (on brief); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

## OPINION OF THE COURT

EVERETT, Chief Judge:

A general court-martial with members convened at Plattsburgh Air Force Base,

New York, and tried Wilson on a charge of premeditated murder, in violation of Article 118 of the Uniform Code of Military Justice, 10 U.S.C. § 918. He was found guilty of unpremeditated murder and was sentenced to the maximum punishment—confinement for life, dishonorable discharge, total forfeitures, and reduction to airman basic. After the findings and sentence had been approved by the convening authority, the Court of Military Review affirmed in an unpublished opinion, over the vigorous dissent of Judge Snyder. In turn, we granted review on several issues, 19 M.J. 271, some of which we now decide in favor of appellant. We returned the case to that court for further review, 21 M.J. 106; their supplementary opinion is now before us.

## I

The homicide of which Wilson was convicted resulted from a violent confrontation between five intoxicated white security policemen and two black airmen, wherein racial epithets, obscene gestures, and blows were exchanged. At a later point in the encounter, Wilson returned to his dormitory room, obtained a bed extender, went back outdoors, and struck his victim with this object. Ultimately, the blow proved fatal.

■ The evidence was sufficient to raise the issue of self-defense, on which the military judge instructed the court members. Unfortunately, as Judge Snyder noted in his dissent, these instructions were somewhat confusing. First, the judge stated that "the accused must have actually believed that the amount of force he used was required to protect against death or serious bodily harm"; but later he advised the members that "[t]he accused should be excused if he used only the force which *reasonably appeared to him to be necessary to protect himself from impending danger.*" (Emphasis added.) Thus, initially, the judge instructed that a subjective belief on the part of the accused that he was using reasonable force would suffice as a defense; but thereafter he invoked an objective standard.

As Judge Snyder also pointed out, the law announced by this Court is that there must be reasonable grounds to support an accused's fear of death or serious bodily harm—an objective standard—but that the amount of force which an accused may lawfully employ is governed by his own honest belief—a subjective standard. *See, e.g., United States v. Vaughn,* 15 U.S.C. M.A. 622, 36 C.M.R. 120 (1966). Therefore, the judge's second instruction was erroneous.

■ Despite this error, we conclude that Wilson is not entitled to a retrial on the issue of self-defense. Earlier in his instructions, the military judge correctly informed the members as to the subjective standard to be applied in determining the lawfulness of the force used in self-defense. Absent a specific defense objection or request, the later instructional defect does not require reversal in this case.

## II

■ Defense counsel requested that the military judge advise the court members that involuntary manslaughter was a lesser-included homicide offense. In this connection, he contended that "there's evidence before the court that the accused didn't want to kill or do grievous bodily harm to anybody, and that should require involuntary manslaughter instructions." The judge at once inquired: "By culpable negligence?"—to which defense counsel answered in the affirmative. After trial counsel argued that the evidence did not raise any issue of "culpable negligence," the judge stated: "I agree. This case doesn't encompass involuntary manslaughter."

■ We also agree that the evidence does not suggest "culpable negligence." Therefore, involuntary manslaughter under Article 119(b)(1) of the Code, 10 U.S.C. § 919(b)(1), is not in issue. However, under Article 119(b)(2), involuntary manslaughter can be committed if the accused "unlawfully kills" another "while perpetrating or attempting to perpetrate an of-

fense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person." Thus, for example, homicide resulting from a different type of assault constitutes involuntary manslaughter.

As used by appellant, the bed extender with which he struck his victim would qualify as "a dangerous weapon or other means or force likely to produce death or grievous bodily harm." See Article 128(b)(1), UCMJ, 10 U.S.C. § 928(b)(1). Thus, he committed an aggravated assault on his victim, who died therefrom. However, under Article 118, a death which results from an aggravated assault with a dangerous weapon is not automatically murder. Instead, the factfinder must be convinced beyond a reasonable doubt that the accused intended to kill or do great bodily harm.

■■■ The use of a deadly weapon against another certainly justifies an inference that death or great bodily harm was intended. However, nothing in the Code prescribes that this inference is elevated to a conclusive presumption.[1] Therefore, when, as here, an accused denies possessing the intent to kill or do bodily harm, the factfinder must determine whether this intent existed and, unless convinced beyond a reasonable doubt that it did exist, may convict only of involuntary manslaughter. The military judge failed to take this possibility into account when he declined to instruct on involuntary manslaughter. Although, admittedly, defense counsel was proceeding on an erroneous theory of "culpable negligence," we do not believe that this error can be excused as having been "invited" by the defense or that it forfeited appellant's right to an instruction on involuntary manslaughter.

We recently observed:

As the United States Supreme Court has held, "[S]o long as there was some evidence [raising the lesser-included offense], the credibility and force of such evidence must be for the jury, and cannot be matter of law for the decision of the court." *Stevenson v. United States,* 162 U.S. 313, 315, 16 S.Ct. 839, 40 L.Ed. 980 (1896). Indeed, any doubt whether the evidence is sufficient to raise the need to instruct on a lesser-included offense must be resolved in favor of the accused. *United States v. Steinruck,* 11 M.J. 322 (C.M.A.1981); *United States v. Staten,* 6 M.J. 275 (C.M.A.1979).

*United States v. Rodwell,* 20 M.J. 264, 267 (C.M.A.1985). As pointed out in *United States v. Jackson,* 6 M.J. 261, 263 n.5 (C.M.A.1979):

[I]t is absolutely essential that *all* factual issues and offenses raised at all in the evidence be the subject of instructions— requested or not—by the trial judge. This is demanded not out of an abundance of caution, but from the desire that the fact-finding function be exercised to the fullest by the jury—the essence of a fair trial. *See United States v. McGee,* 1 M.J. 193 (C.M.A.1975).

■■■ The majority of the Court of Military Review observed that the court members did not convict of the lesser-included offense of voluntary manslaughter, on which they had been properly instructed; and they concluded therefrom that the members would never have elected to convict of the lesser offense of involuntary manslaughter, even if they had been advised thereof by the military judge.

The Court rejected a somewhat similar argument in *United States v. McGee,* 1 M.J. 193 (C.M.A.1975), where a conviction of voluntary manslaughter was reversed because the trial judge had erred in failing to instruct the court members *sua sponte* on the lesser-included offense of involuntary manslaughter through culpable negligence. There the Government had argued that an accused is not prejudiced by the absence of an instruction on a lesser included offense so long as the trial judge instructs on an offense greater in degree than the omitted offense, but lesser in degree than the offense of

---

1. At common law, use of a deadly weapon would have established conclusively that the defendant possessed the malice required for murder.

which the accused ultimately is found guilty.

*Id.* at 194. To this argument we replied (*id.* at 195):

The fallacy in the premise of such a test for prejudice lies in its assumption that lesser included offenses can be arranged vertically in terms of relative severity. In our view, the relevant inquiry to assess the degree of prejudice which resulted in this case from the failure to instruct on involuntary manslaughter through culpable negligence would be to ask whether there exists another lesser included offense properly instructed upon of which the appellant legally could have been found guilty, assuming the jury believed he had acted in a culpably negligent manner as his testimony suggested.[4] Since the element of culpable negligence did not enter into the trial judge's instructions on any of the other lesser included offenses, it cannot be said that the jury properly could have found the appellant guilty of some offense other than involuntary manslaughter through culpable negligence.

---

[4] To suggest that the jury's verdict finding the appellant guilty of an offense not including the element of culpable negligence constitutes a rejection by the jury of the culpable negligence concept would, in practical effect, undermine the requirement that the judge provide the court members with appropriate legal guidelines prior to their deliberations for it would sanction inappropriate and incomplete instructions through the test-for-prejudice vehicle so long as the accused ultimately was found guilty of an offense which, itself, had been instructed upon properly.

■ If the court members had convicted Wilson of premeditated murder, after being instructed on unpremeditated murder, it could be reasoned that the failure to instruct on other lesser offenses, even if error, was clearly harmless. *Cooper v. Campbell*, 597 F.2d. 628, 631 (8th Cir.1979). However, here it seems quite possible that the court members could have rejected voluntary manslaughter because they conclud-

ed that the provocation was inadequate or that Wilson was not acting in heat of passion, but nevertheless might have decided that he never intended to kill or do great bodily harm. Therefore, we cannot be sure under the circumstances of this case that the judge's failure to instruct on involuntary manslaughter was harmless error.[2]

## III

■ In connection with sentencing, defense counsel asked the military judge to instruct the court members that they might consider in extenuation and mitigation the evidence of provocation by the victim which had been introduced prior to findings. The military judge believed, however, that such an instruction would be almost an invitation to reconsider the original findings of guilty.

We disagree with his conclusion. Even though evidence of provocation may be insufficient to reduce a homicide offense from murder to voluntary manslaughter, it nonetheless may be beneficial to an accused in connection with sentencing and is proper extenuation and mitigation. The situation is like that which arises when evidence of drunkenness is insufficient to prevent a finding that the accused possessed a requisite specific intent but nonetheless may be properly considered in extenuation and mitigation. *See United States v. Cook*, 11 U.S.C.M.A. 579, 29 C.M.R. 395 (1960). Therefore, as requested, the defense was entitled to a specific instruction to the court members that they could consider for sentencing purposes the extensive evidence which they had heard previously concerning the provocation by the victim which preceded his death.

## IV

The defense requested that the military judge grant additional peremptory challenges because the membership of the court had been reduced below the quorum required by the Uniform Code Art. 16(1)(A),

---

**2.** Even though appellant received a heavy sentence for the offenses for which he was convicted, we reject the contention that this conclusive-

ly demonstrates that the judge's failure to instruct on involuntary manslaughter was harmless.

UCMJ, 10 U.S.C. § 816(1)(A). We decide this issue against appellant for the reasons stated in *United States v. Carter*, 25 M.J. 471 (C.M.A.1988). We also decide the other granted issues against appellant.

V

The decision of the United States Air Force Court of Military Review is reversed; the record of trial is returned to the Judge Advocate General of the Air Force for remand to that court, which may set aside the findings and sentence and order a rehearing or may affirm findings of guilty of involuntary manslaughter and either reassess the sentence based on those findings or order a rehearing on sentence.[3]

Judge COX concurs.

SULLIVAN, Judge (concurring in part and dissenting in part):

I agree with my Brothers that resentencing in this case is required. I disagree with their holding that a rehearing on findings is required. Art. 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

---

3. *See United States v. Suzuki*, 20 M.J. 248 (C.M.A.1985).