UNITED STATES, Appellee,

v.

Tyrone L. WELLS, Aviation
Ordnanceman Third Class,
U.S. Navy, Appellant.

No. 98–0681.
Crim.App. No. 96–1349.

U.S. Court of Appeals for
the Armed Forces.

Argued April 8, 1999.
Decided Sept. 30, 1999.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and GIERKE and EFFRON, JJ., joined. GIERKE, J., filed a concurring opinion. CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Major Michael R. Osborn*, USMC (argued); *Lieutenant Jennifer L. Eichenmuller*, JAGC, USNR (on brief).

For Appellee: *Major David F. Bauman*, USMCR (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Lieutenant Kevin S. Rosenberg*, JAGC, USNR (on brief).

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members during the summer of 1995 at Naval Air Station, Jacksonville, Florida. He pleaded not guilty to charges of premeditated murder, assault, and communicating a threat under Articles 118, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 918, 928, and 934, respectively. He was found guilty of premeditated murder and sentenced to a bad-conduct discharge, confinement for life, forfeiture of $400 pay per month for life, and reduction to E–1. On June 11, 1996, the convening authority approved the adjudged sentence and, except for the bad-conduct discharge, ordered it executed. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

On January 15, 1999, this Court granted review on the following issues:

I.

WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED THAT THE MILITARY JUDGE'S ERROR IN FAILING TO INSTRUCT THE MEMBERS ON THE LESSER–INCLUDED OFFENSE OF MANSLAUGHTER WAS HARMLESS, EVEN THOUGH IT FOUND THAT THE FACTS REASONABLY RAISED THE POSSIBILITY THAT APPELLANT ACTED IN THE HEAT OF PASSION.

II.

WHETHER THE LOWER COURT ABUSED ITS DISCRETION AND DENIED APPELLANT THE FAIR AND IMPARTIAL REVIEW OF THE RECORD GUARANTEED BY ARTICLE 66(c), UCMJ, WHEN IT RELIED UPON CLEARLY ERRONEOUS FINDINGS OF FACT IN MAKING ITS DETERMINATION THAT THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN APPELLANT'S CONVICTION OF PREMEDITATED MURDER.

We hold that the appellate court below erred in finding harmless error in this case.[1] *See United States v. Johnson*, 1 MJ 137, 139 (CMA 1975); *United States v. Comer*, 421 F.2d 1149 (D.C.Cir.1970); *see generally Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896).

The Court of Criminal Appeals summarized the facts as follows:

After a verbal altercation on the evening of 3 December 1994, the appellant grabbed the car keys belonging to his estranged wife, Mrs. Raquel Wells, and hurried to drive away. Mr. Marsa Powell, a friend of Mrs. Wells who had also argued with the appellant, followed the appellant to his car and attempted to recover the keys. Powell then displayed a .45 caliber semiautomatic pistol in his waistband. As the appellant sped away, Powell fired a round from his pistol into the air.

During the return trip to his apartment, the appellant saw a police officer on patrol. Instead of reporting the incident to the police, however, the appellant decided to call a friend of his, PR3 Perry, whom he told about the incident. He then asked Perry to drive him back to the apartment complex, ostensibly to return the set of keys to Mrs. Wells. Before leaving his apartment to meet Perry, the appellant got his .380 caliber semiautomatic pistol to take with him "for protection." Since Powell did not know Perry or recognize his

---

1. In view of our resolution of this case based on Issue I, there is no need to address Issue II.

car, they decided to take his car. The trip to the apartment complex took only minutes. They arrived about 2030.

As the two friends cruised slowly through the parking lot, the appellant noticed his wife and two young children still waiting to get back into their apartment. He then saw, and pointed out to Perry, Powell as the guy who "shot" at him earlier. As they got closer to Powell, Perry decided to stop the car, apparently to confront him. After he did so, the appellant shouted to get Powell's attention. In his testimony at trial the appellant admitted that at this point he had his .380 pistol in his hand, loaded, with the safety off, and with the hammer cocked back. Powell began to converse with the other two men about the earlier incident. As Powell approached his side of the car, the appellant put his pistol out of sight. They continued to argue. Powell then began to back away.

As he did so the appellant retrieved his pistol and held it just below the level of the door. Both Perry and another witness, who was observing the argument from 100 feet away, testified that Powell was using hand motions, at about chest and shoulder level, to help make his point as he backed away. *The appellant testified, however, that he saw Powell begin to reach for his pistol, which he had noticed outlined in the waistband of his trousers beneath his shirt. Afraid that Powell was going to shoot him, the appellant testified that he immediately exited the car and opened fire.* Although the medical examiner could not testify as to the sequence, Powell was struck with three rounds. One passed through his left arm, one through his neck, and a third through his chest cavity. The latter round penetrated his lungs and heart. He was dead within 2 minutes.

Two objective witnesses testified that, shortly after they heard several gunshots, they saw a man they later learned to be Powell working on a pistol in his hand, as if he were trying to clear a jam. A .45 caliber semi-automatic pistol was found near his body. An expended shell was jammed in the ejection mechanism. In the meantime, the appellant ran from the scene, disposing of the pistol and losing his glasses as he fled. A few hours later he turned himself in to the civilian authorities.

The appellant has contended throughout the trial and on appeal that he had been justified in shooting Powell because he was merely acting in self-defense.

Unpub. op. at 3–4 (emphasis added).

At trial, the judge instructed the jury on premeditated murder, stating:

> Now you are advised that the killing of a human being is unlawful when done without legal justification or excuse. The term "premeditated design to kill" means formation of a specific intent to kill, and consideration of the act intended to bring about the death. The premeditated design to kill does not have to exist for any measurable or particular length of time. The only requirement is that it must precede the killing.

The judge also instructed the panel on unpremeditated murder, self-defense, and mutual combat. No instruction for voluntary manslaughter, adequate provocation, or heat of passion and the ability to premeditate was requested, given *sua sponte*, or its absence objected to.

The lower court concluded that the military judge erred by failing to *sua sponte* give a voluntary manslaughter instruction. It said:

> Moreover, resolving any doubt to the benefit of the appellant, we conclude that his testimony that the victim drew his weapon first, along with the other evidence introduced, including the weapon itself, "reasonably raised" the lesser-included offense of voluntary manslaughter.
>
> While not the classic scenario giving rise to "heat of sudden passion," if Powell had indeed made an overt attempt to do great bodily harm to the appellant, that would constitute sufficient provocation.

*Id.* at 8. The court, nonetheless, affirmed on the basis that such error was harmless.

Appellant was found guilty of the premeditated murder of Marsa Powell in violation of Article 118(1), UCMJ. On appeal, he argued that the trial judge erred by failing to give, *sua sponte,* an instruction on the lesser offense of voluntary manslaughter in violation of Art. 119(a), UCMJ, 10 USC § 819(a). The Court of Criminal Appeals found error in the judge's failure to give this instruction, but it concluded such error was harmless under the particular circumstances of this case. Before this Court, appellant challenges the service appellate court's finding of harmless error, and the Government defends the service court's opinion on this issue.

■ We initially note that it is well established that an accused in a federal civilian criminal trial is entitled to an instruction on a lesser-included offense to the one charged if reasonably warranted by the evidence presented. *See Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982). In *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the Supreme Court explained this right, as follows:

Although the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, *it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.* The Federal Rules of Criminal Procedure deal with lesser included offenses, see Rule 31(c), and the defendant's right to such an instruction has been recognized in numerous decisions of this Court. See, *e.g., Sansone v. United States,* 380 U.S. 343, 349, [85 S.Ct. 1004, 13 L.Ed.2d 882] (1965); *Berra v. United States,* 351 U.S. 131, 134, [76 S.Ct. 685, 100 L.Ed. 1013] (1956); *Stevenson v. United States,* 162 U.S. 313, [16 S.Ct. 839, 40 L.Ed. 980] (1896).

*Id.* at 208, 93 S.Ct. 1993 (footnotes omitted) (emphasis added). This same right exists, as well, for an accused servicemember at a court-martial. *See* Art. 79, UCMJ, 10 USC § 879 ("An accused may be found guilty of an offense necessarily included in the offense charged[.]").

It is also well established in federal civilian courts that an instruction on such a lesser-included offense does not require a request by an accused. A noted commentator on federal law states:

It is not only on request of the defendant that an instruction may be given on a lesser included offense. The Government may request such a charge or the court may give the instruction without a request from either party. If the instruction is given, it is customary to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to guilt of the greater offense. If the jury has a choice of offenses of which they may find defendant guilty, defendant is entitled, on request, to instructions making clear the difference between the offenses.

There are cases holding that it is not error for the court to fail to instruct on a lesser included offense if there was no request for such an instruction, or if the request failed to specify any particular offense thought to be included within the offense charged. *Even where there has been no request, however, an appellate court may consider whether the failure to instruct on the lesser offense was plain error.*

2 Wright, *Federal Practice and Procedure: Criminal 2nd* § 498 at 800–01 (1982) (footnotes omitted) (emphasis added).

■ Military law goes further. It requires a trial judge to give such an instruction on a lesser-included offense *"sua sponte* ... for which there is ... some evidence which reasonably places the lesser included offense in issue." *United States v. Staten,* 6 MJ 275, 277 (CMA 1979); *see* RCM 920(e)(2) and Discussion, Manual for Courts–Martial, United States (1995 ed.)[2] ("A matter is 'in

---

2. All Manual provisions are cited to the version applicable at the time of trial. The 1998 version is unchanged unless otherwise indicated.

issue' when some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose."); *United States v. Johnson, supra.*

■ The Court of Criminal Appeals held that the military judge erred by failing to give an instruction on voluntary manslaughter *sua sponte.* Indeed, the lower court found that, while not presenting the "classic scenario" of heat of passion, appellant's testimony and other evidence introduced at trial did provide sufficient evidence to warrant a *sua sponte* instruction on voluntary manslaughter. Unpub. op. at 8; *cf. United States v. McGee,* 1 MJ 193, 194–95 (CMA 1975) (instruction on involuntary manslaughter warranted where evidence shows victim attacked first). Based on the evidence in the case, we agree that the judge's failure to instruct on voluntary manslaughter was legal error. *See United States v. Wilson,* 26 MJ 10 (CMA 1988); *but cf. United States v. Black,* 3 USCMA 57, 11 CMR 57 (1953) (assuming truth of testimony, neither heat of passion nor adequate provocation shown).

More particularly, evidence was admitted in this case that a heated domestic dispute arose between appellant and his estranged wife. It was also shown that the presence of the victim, Marsa Powell, exacerbated the situation early on because of appellant's belief that Powell was involved with his estranged wife. This confrontation then escalated further when Powell displayed a gun and soon afterward fired a shot as appellant drove away with his wife's keys. Appellant testified that he heard a shot or two and believed they were fired at him. He also testified that minutes later, when he returned to the parking lot and again confronted Powell, he knew that Powell had a gun and was not afraid to use it. Appellant's testimony at trial directly placed heat of passion and adequate provocation at issue in his case. *See McGee, supra* at 194; *see also United States v. Houlihan,* 937 F.Supp. 75, 78 (D.Mass.1996) (prior history and relationship of accused and victim).

Turning to the question of prejudice required for a new trial, we note that the general rule in the federal civilian courts is that reversal is required "[o]nly when an appellate court is convinced that the *evidence* issues are such that a rational jury could *acquit* on the charged crime but *convict* on the lesser crime[.]" *United States v. Moore,* 108 F.3d 270, 272–73 (10th Cir.1997) (first emphasis added); *see United States v. Estrada–Fernandez,* 150 F.3d 491, 496–97 (5th Cir. 1998). This standard is consistent with our own cases. *See United States v. Rodwell,* 20 MJ 264, 267–68 (CMA 1985); *United States v. Staten* and *United States v. McGee,* both *supra.* The appellate court below did not rely on these decisions in finding harmless error.

■ Instead, the Court of Criminal Appeals fashioned its own harmless error approach in appellant's case and affirmed his conviction for premeditated murder. Basically, it focused on the *instructions* on other lesser-included offenses given in this case and the fact that the members still found appellant guilty of the greater offense. *See generally Wilson, supra* at 14, citing dicta in *Cooper v. Campbell,* 597 F.2d 628, 631 (8th Cir.1979). It concluded that, in these circumstances, the failure of the trial judge to instruct on the lesser offense of voluntary manslaughter did not "materially prejudice" appellant's conviction for the offense of premeditated murder. *See* Art. 59(a), UCMJ, 10 USC § 859(a). We disagree with this approach for several reasons.

First, the lower appellate court opined that appellant was not prejudiced because the members were instructed on and rejected a substantially similar lesser-offense charge, *i.e.,* unpremeditated murder. The court noted that this lesser-included offense had the same elements as voluntary manslaughter, and the members nonetheless chose to find premeditated murder. Accordingly, it speculated that the members would also have rejected voluntary manslaughter if properly instructed on it.

We note that voluntary manslaughter is a lesser offense of both premeditated murder and unpremeditated murder. *See* para.

43d(2), Part IV, Manual, *supra.* However, it has two proof requirements which distinguish it from unpremeditated murder, which the members were not instructed on by the trial judge at any time in this trial. *See* Art. 118; Art. 119(a) (heat of passion and adequate provocation). In the past, we have rejected speculation as to members' findings in these circumstances because of the absence of any instructions which would have placed these issues before the members in some form. *See McGee,* 1 MJ at 195 n. 4; *Wilson,* 26 MJ at 14. We do so again, today.

■ Second, the lower appellate court opined that the "little direct evidence . . . [of] heat of passion based on adequate provocation," coupled with the members' finding of premeditation, logically suggests the members would not have found appellant guilty of voluntary manslaughter if properly instructed on it. Unpub. op. at 10. An appellate court does not normally evaluate the credibility of the evidence presented in a case to determine harmless error, especially in a case like appellant's, where evidence on the disputed matters is not overwhelming. *See Stevenson v. United States, supra.* We also disagree that a finding of premeditation "logically precluded" a finding of heat of passion and adequate provocation. No instruction was given to the members explaining premeditation in terms of "cool-minded reflection" or otherwise, so as to permit a rational inference that the members rejected a finding of heat of passion and adequate provocation. *See United States v. McGee, supra; see also* para. 3–86, Note 6, Military Judges' Benchbook at 3–169 (Dept. of the Army Pamphlet 27–9 (Change 2, Oct. 1986)) (specific instruction explaining heat of passion effect on premeditation).

■ The lower court's final two reasons for finding harmless error are also without merit. Our case law clearly holds that self-defense instructions in a premeditated murder case do not render harmless a judge's instructional omission on the lesser offense of voluntary manslaughter. *See Johnson,* 1 MJ at 139 (premeditated murder conviction reduced to voluntary manslaughter, even where defense counsel objected that a lesser-offense instruction to voluntary manslaughter would dilute self-defense argument). Moreover, this Court has held that a finding of premeditation and implied rejection of the defense's self-defense argument does not render harmless the failure of the judge to give an instruction on the lesser-included offense of voluntary manslaughter—again, where the evidence reasonably warranted such an instruction. *United States v. Jackson,* 6 MJ 261, 263 n. 4 (CMA 1979); *cf. United States v. Saulsberry,* 47 MJ 493, 495 (1998); *Staten,* 6 MJ at 277 (self-defense requires more than fear and provocation, thus lower court may find voluntary manslaughter and reject self-defense). In sum, the service court's harmless error analysis was legally flawed.

We conclude that this is a case where an entire instruction on a lesser-included offense was omitted by the trial judge. *See Stevenson,* 162 U.S. 313, 16 S.Ct. 839; *cf. Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *Rose v. Clark,* 478 U.S. 570, 579–80, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (part of instructions on elements of an offense omitted or erroneous); *see generally Keeble,* 412 U.S. at 213, 93 S.Ct. 1993 (difficult constitutional questions raised under Due Process Clause where an accused denied right to jury instruction on lesser-included offense). Moreover, as noted above, there was ample evidence in this case from which the members could reasonably find that appellant committed this lesser offense of manslaughter, but not the greater charged offense of premeditated murder. *See Stevenson v. United States* and *Hopper v. Evans,* both *supra.* Thus, a new trial is warranted under our case law and general federal practice. *See United States v. Johnson, supra; see also United States v. Comer, supra; United States v. Benally,* 146 F.3d 1232, 1236–37 (10th Cir.1998) (reversal of voluntary manslaughter conviction for failure to give instruction on involuntary manslaughter).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court, which may affirm the

lesser offense of voluntary manslaughter and reassess the sentence, or order a rehearing.

GIERKE, Judge (concurring):

While I do not disagree with the majority's conclusion that the military judge erred, that conclusion goes beyond the granted issue and is unnecessary. The conclusion of the court below that the military judge erred was not challenged by the Government and is the law of the case. *See United States v. Grooters,* 39 MJ 269, 272–73 (CMA 1994).

CRAWFORD, Judge (dissenting):

I dissent, based on the affirmative waiver by defense counsel, RCM 920(f), Manual for Courts–Martial, United States (1995 ed.), and alternatively on the basis that any error in this case was harmless. *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)(Court applied harmless error analysis for failure to instruct on a central element of charged offense.).

FACTS

On the evening of December 3, 1994, appellant drove over to the off-base apartment of his estranged wife in Jacksonville, Florida. He had moved out of the apartment about a week earlier. Shortly after he arrived at the apartment, his wife drove up with Marsa Powell, the eventual murder victim. Seeing appellant and not wanting a confrontation, she drove past him, but at Marsa's urging, she returned. Appellant and his wife got into a verbal altercation, primarily about her being with another man. His wife stated that she had brought Marsa over to the apartment to visit with her sister. However, the sister came downstairs and said she was going to work.

Appellant's wife stated she was going to take Marsa home and locked the door of her apartment as she was preparing to leave. Appellant grabbed her car keys from her hands and ran to his car. Marsa chased appellant to the car and tried to retrieve the keys. Noticing that Marsa was carrying a pistol, appellant rolled up the windows to the car and sped away. As the car drove away,

Marsa took his pistol out and fired a shot into the air.

After leaving his wife's apartment complex, appellant returned to his apartment. That drive took approximately 10 to 15 minutes. At his apartment appellant called a friend, Petty Officer [PR3] Anthony Perry, United States Navy. After about 5 minutes, PR3 Perry returned appellant's call.

Appellant told PR3 Perry that he had gotten into "something" at his wife's apartment and that someone had shot at him. Appellant wanted PR3 Perry to drive him back to the apartment. PR3 Perry's assumption was that they were going back over to "beat the dude up or something."

Since appellant did not know where PR3 Perry was located, they met at a local convenience store. Ten minutes after the first phone call, and about 15 minutes after appellant arrived at his apartment to retrieve his gun, appellant reached the store and again "beeped" PR3 Perry. A few minutes later, PR3 Perry arrived. From the convenience store, the two drove separately to the apartment complex of one of PR3 Perry's friends, where appellant left his car. As PR3 Perry was speaking with his friend on a telephone, appellant put a clip into his gun and got into PR3 Perry's car. The two then drove to appellant's wife's apartment with Perry behind the wheel. En route, PR3 Perry told appellant his gun has been confiscated. Appellant asked if the police still had his gun, and Perry replied "yes." Appellant retorted he still had his.

When they pulled into the apartment complex, Marsa was still in the parking lot and on PR3 Perry's side of the car. Perry did not know who Marsa was. When appellant spotted Marsa, he told PR3 Perry, "That's the dude who shot at me." At that point, appellant's gun was still under his seat.

They drove through the parking lot and turned around. While they were turning around, Marsa was walking in their general direction. Appellant shouted to Marsa to get his attention.

After they turned the car around, Marsa was on appellant's side of the car. Both appellant and Marsa began to exchange

words. No mention was made of the keys, but a heated argument started. While arguing, appellant had the gun in his right hand just under the window ledge out of Marsa's view. During the conversation, Marsa backed away and appellant got out of the car and shot Marsa.

Appellant started running as he fired three shots at Marsa. Marsa was hit three times. One of the shots pierced his heart, and he died at the scene within 2 minutes. A .45 caliber semi-automatic pistol was found lying beside Marsa's body. Appellant fled the scene but turned himself in to the police a few hours later.

Appellant testified that he shot Marsa because he saw him reach for his gun. Petty Officer Hunt testified that he did not see a gun in Marsa's hand. A witness on a balcony approximately 100 feet away observed the shooting. Likewise, he did not see a gun in Marsa's hand. According to the witness's testimony, Marsa was making hand motions, at about the chest and shoulder level, to help make his point as he backed away. Throughout his court-martial, appellant contended he had been justified in shooting Marsa because he was merely acting in self-defense.

## DISCUSSION

RCM 920(e) provides:

*Required instructions.* Instructions on findings shall include:

\*     \*     \*

(2) A description of the elements of each lesser included offense in issue, unless trial of a lesser included offense is barred by the statute of limitations (Article 43) and the accused refuses to waive the bar;

(3) A description of any special defense under R.C.M. 916 in issue;

(4) A direction that only matters properly before the court-martial may be considered;

\*     \*     \*

(6) Directions on the procedures under R.C.M. 921 for deliberations and voting; and

(7) Such other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or which the military judge determines, sua sponte, should be given.

RCM 920(f) provides:

*Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. The military judge may require the party objecting to specify of what respect the instructions given were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

Both sides were able to review a copy of the proposed written instructions. There was a lengthy discussion concerning these instructions, as well as comments back and forth between the judge and trial counsel. After trial counsel indicated that he had nothing else to add, the judge questioned defense counsel. Defense counsel responded, "Sir, just to expand on the 802 [conference], the limited purpose testimony. We decided that would not be an instruction that we would desire." An exchange followed in which the judge was amenable to taking suggestions from either side. When asked if there were any other issues which needed to be raised, both counsel replied in the negative.

Both sides were given the instructions to review overnight. The next morning, defense counsel noted typographical errors. The judge agreed over the prosecution's objection to give a self-defense instruction, including a statement that returning to the apartment to seek a peaceful interview was not provocation by appellant.

The defense had the opportunity to review the instructions, offered numerous suggestions, and failed to raise any issue regarding a heat of passion instruction. The fact that the defense engaged in the discussions and review of the instructions, which took place during a 2-day time period, and did not request a heat of passion instruction constitutes a waiver of any instruction as to a

lesser-included offense. *See United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *cf. United States v. Smith,* 50 MJ 451, 457 (1999)(Effron, J., concurring in part and in the result). Furthermore, in the alternative, any error based on the instructions set forth below did not affect a substantial right of appellant. *United States v. Powell,* 49 MJ 460 (1998).

An unlawful killing done with an intent to kill but in the heat of passion caused by adequate provocation constitutes voluntary manslaughter. Para. 44c(1)(a), Part IV, Manual, *supra.* However, the provocation must not be sought or induced by the accused.

Paragraph 44c(1)(b) provides:

The provocation must be adequate to excite uncontrollable passion in a reasonable person, and the act of killing must be committed under and because of the passion. However, the provocation must not be sought or induced as an excuse for killing or doing harm. If, judged by the standard of a reasonable person, sufficient cooling time elapses between the provocation and the killing, the offense is murder, even if the accused's passion persists. Examples of acts which may, depending on the circumstances, constitute adequate provocation are the unlawful infliction of great bodily harm, unlawful imprisonment, and the sight by one spouse of an act of adultery committed by the other spouse. Insulting or abusive words or gestures, a slight blow with the hand or fist, and trespass or other injury to property are not, standing alone, adequate provocation.

Under the majority opinion, appellant was entitled to the following instruction:

(1) That Marsa C. Powell is dead;

(2) That his death resulted from the act of the accused in shooting him with a handgun on December 3, 1994, in Jacksonville, Florida;

(3) That the killing of Marsa C. Powell by the accused was unlawful; and

(4) That, at the time of the killing, the accused had an intent to kill or inflict great bodily harm upon Marsa C. Powell.

The killing of a human being is unlawful when done without legal justification or excuse.

The offense of voluntary manslaughter is committed when a person, with intent to kill or inflict great bodily harm, unlawfully kills a human being *in the heat of sudden passion caused by adequate provocation.* "Passion" means anger, rage, pain, [or] fear. Proof that the accused was acting in the heat of passion caused by adequate provocation is not required. It is essential, however, that the four elements I have listed for you to be proved beyond reasonable doubt before the accused can be convicted of voluntary manslaughter.

Para. 3–87b, Notes 1 and 2, Military Judges' Benchbook at 3–175 (Dept. of the Army Pamphlet 27–9 (Change 2, Oct. 1986))(emphasis added).

The judge did give a self-defense instruction, including the following:

A person is not entitled to self-defense if he intentionally provoked the attack upon him or voluntarily engaged in mutual fighting unless he has previously withdrawn in good faith. A person has provoked an attack and thereby or therefore given up the right to self-defense if he willingly and knowingly does some act toward the other person reasonably calculated and intending to lead to a fight or deadly conflict. Unless such act is clearly calculated and intended by the accused to lead to a fight or a deadly conflict the right of self-defense is not lost.

A person may seek an interview with another in a non-violent way for the way [sic] of demanding an explanation of offensive words or conduct or demanding redress of a grievance without giving up the right to self-defense. He may not seek an interview—I am sorry. That's wrong too. He need not seek the interview in a friendly mood. The right to self-defense is not lost merely because a person arms himself before seeking the interview. The burden of proof on this issue is upon the prosecution. *If you are convinced beyond a reasonable doubt that the accused intentionally provoked attack upon himself so that he could respond by injuring or killing, then you*

*have found that the accused gave up the right to self-defense.*

(Emphasis added.)

It was on the basis of these two instructions that the court below correctly found that any error was harmless, because the "self-defense was more favorable to the appellant than would have been an instruction on the lessor-included offense of voluntary manslaughter." Unpub. op. at 10. The court continued, as shown in the instructions above, that the "Government must prove the absence of self-defense beyond a reasonable doubt." *Id.* The same would not be true under the involuntary manslaughter instruction.

Under these circumstances, any error was harmless. *Neder v. United States, supra.* For these reasons, I dissent.