Judge ERDMANN
delivered the opinion of the court.
Sergeant Aaron R. Stanley pleaded guilty at a general court-martial to wrongful possession of marijuana with the intent to distribute, wrongful use and distribution of methamphetamines on divers occasions, absence without leave, violating a lawful order of a noncommissioned officer, and adultery, in violation of Articles 112a, 86, 92, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 886, 892, 934 (2006). Stanley pleaded not guilty to two specifications of premeditated murder and one specification of conspiracy to commit murder in violation of Articles 118 and 81, UCMJ, 10 U.S.C. §§ 918, 881 (2006). He was found guilty of all charges except the conspiracy charge and a panel sentenced him to a reprimand, reduction to E-l, forfeiture of all pay and allowances, confinement for life without the eligibility for parole, and a dishonorable discharge. The convening authority approved the adjudged sentence except for the reprimand, and ordered that Stanley be credited with 271 days of confinement credit. The United States Army Court of Criminal Appeals (CCA) affirmed the findings and the sentence. United States v. Stanley, No. ARMY 20050703, 2010 CCA LEXIS 348, 2010 WL 3927478 (A.Ct.Crim.App. Sept. 29, 2010).
We granted review of this case to determine if the military judge erred by not including the principle of escalation of force in the self-defense instructions provided to the members.[1] A military judge is required to instruct members on any affirmative defense that is “in issue,” and a matter is considered “in issue” when “some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.” United States v. Lewis, 65 M.J. 85, 87 (C.A.A.F.2007) (citation and quotation marks omitted). We hold that the military judge did not err in excluding the principle of escalation of force in the self-defense instructions to the members as the principle was not “in issue.”

Background

Stanley, Staff Sergeant Matthew Werner, Sergeant Eric Colvin, and Specialist Christopher Hymer were all involved in a criminal enterprise to grow marijuana and manufacture methamphetamines at a farmhouse rented by Stanley. In the days leading up to September 13, 2004, the day Stanley killed Werner and Hymer at the farmhouse, the four had been using large amounts of meth-amphetamines with little or no sleep.
Prior to the incident at the farmhouse, Werner had made death threats against Stanley because he thought Stanley had slept with his wife. In addition, Werner threatened to report their drug activities at the farmhouse to the authorities. Concerned about Werner’s threat to call the police, Stanley and Colvin went to the farmhouse to destroy the drugs. Because of Werner’s death threats, Stanley went to the farmhouse that night expecting a conflict with Werner and had armed himself with a pistol. When they arrived Stanley and Colvin hid Colvin’s truck and went into the farmhouse. Both were armed with firearms. When Werner and Hymer arrived at the farmhouse Stanley hid in a closet where the group stored firearms. The record demonstrates that the incident that followed Werner’s and Hymer’s arrival at the farmhouse was a rapidly evolving, chaotic situation.[2]
*62 Colvin allowed Werner and Hymer to enter the farmhouse after they claimed they were not armed. Werner accused Colvin of sleeping with his wife and he and Colvin got into a fight with Werner grabbing a kitchen knife and cutting Colvin’s ear. Colvin was able to disarm Werner but then Hymer joined the fray and Colvin called to Stanley for assistance. While the introduction of the knife to the conflict by Werner did escalate the level of the conflict to that of deadly force, Colvin successfully disarmed Werner. Before Stanley entered the kitchen the conflict between Colvin and Werner had become a physical altercation not involving deadly force.
Stanley then came out of the closet armed with at least a pistol, and, according to Colvin a rifle, and held Werner and Hymer at gunpoint. Stanley retained the pistol while he searched the two for weapons (which he did not find). During this period Hymer grabbed a rifle that Stanley had left in the kitchen and fired at Stanley. Stanley then returned fire with his pistol, killing Hymer. Stanley claimed that Werner then attempted to stab Colvin from behind so he shot and killed Werner in defense of Colvin, a version of the event that Colvin disputed.
Before the CCA, Stanley relied mainly on United States v. Dearing, 63 M.J. 478 (C.A.A.F.2006), and Lewis, 65 M.J. 85, and argued that the military judge erred by failing to properly instruct the panel regarding Stanley’s right during mutual combat to exercise self-defense when the force used against him escalated. Although the CCA did note the differences between the instant case and Dearing and Lewis, it concluded that “we do not, and need not decide whether the military judge erred in this case. Assuming arguendo that the military judge’s instructions were inadequate, we are convinced beyond a reasonable doubt that the error did not contribute to the appellant’s conviction or sentence.” 2010 CCA LEXIS 348, at *10-*11, 2010 WL 3927478, at *4.

Discussion

Military judges have substantial discretionary power in deciding on the instructions to give. However, when an affirmative defense is raised by the evidence, an instruction is required. United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F.2002). Whether a panel was properly instructed is a question of law reviewed de novo. United States v. Ober, 66 M.J. 393, 405 (C.A.A.F. 2008).
Self-defense is an affirmative defense found in Rule for Courts-Martial (R.C.M.) 916(e)(1). It consists of two elements:
(A) Apprehended, on reasonable grounds, that death or grievous bodily harm was about to be inflicted wrongfully on the accused; and
(B) Believed that the force the accused used was necessary for protection against death or grievous bodily harm.
An affirmative defense is raised by the evidence when “some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.” Lewis, 65 M.J. at 87 (citations and quotation marks omitted). As we explained in United States v. Schumacher:
[T]he military judge must answer the legal question of whether there is some evidence upon which members could reasonably rely to find that each element of the defense has been established. This test is similar to that for legal sufficiency. Cf. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see United States v. Black, 3 C.M.A. 57, 60, 11 C.M.R. 57, 60 (1953) (“Assuming the truth of each statement made by the accused in explanation of his actions, we conclude that neither of the distinguishing factors of voluntary manslaughter were shown.”).
70 M.J. 387, 389-90 (C.A.A.F.2011).
The question before this court is whether there was “some evidence” that either Werner or Hymer escalated the level of force in the conflict that occurred at the farmhouse that would justify Stanley’s use of deadly force. If so, Stanley was entitled to a self-defense instruction that was tailored to include the principle of escalation of force. *63 R.C.M. 920(a) Discussion; Ober, 66 M.J. at 406.
We initially note that the defense did not object to the military judge’s instructions at trial in this case. However, waiver does not apply to “ ‘required instructions’ such as ... affirmative defenses])]” United States v. Davis, 53 M.J. 202, 205 (C.A.A.F.2000) (quoting United States v. Taylor, 26 M.J. 127, 128 (C.M.A.1988) (alteration in original)). While the escalation of force instruction was not waived by Stanley, the instruction was not warranted under the facts in this case.
In United States v. Cardwell, 15 M.J. 124, 126 (C.M.A.1983), the court stated that “[t]he theory of self-defense is protection and not aggression, and to keep the two in rough balance the force to repel should approximate the violence threatened.” See also Dearing, 63 M.J. at 483. The court also stated in Cardwell that “[e]ven a person who starts an affray is entitled to use self-defense when the opposing party escalates the level of the conflict.” Cardwell, 15 M.J. at 126 (citations omitted).
“‘Deadly force’ may be defined as force ... which [its user] knows creates a substantial risk of death or serious bodily injury to [another].” 2 Wayne R. LaFave, Substantive Criminal Law § 10.4(a), at 144 (2d ed. 2003) (citing Model Penal Code § 3.11(2)). Under the circumstances of this ease, Stanley escalated a conflict involving a physical altercation between Werner and Colvin into one involving the use of deadly force when he came out of the closet and held Hymer and Werner at gun point, and then used the weapon to subdue them and to forcibly search them for weapons.[3] Although the fact that Hymer picked up a rifle and shot at Stanley did constitute the use of deadly force, at that point the level of the conflict had already been escalated to one involving the use of deadly force by Stanley. See R.C.M. 916(e); United States v. Peterson, 483 F.2d 1222, 1233 (D.C.Cir.1973) (“One may deliberately arm himself for purposes of self-defense against a pernicious assault which he has good reason to expect. On the other hand, the true significance of the fact of arming can be determined only in the context of the surrounding circumstances.”) (citations omitted); Wallace v. United States, 162 U.S. 466, 472, 16 S.Ct. 859, 40 L.Ed. 1039 (1896) (“ ‘if [the accused] was himself violating or in the act of violating the law — and on account of his own wrong was placed in a situation wherein it became necessary for him to defend himself against an attack made upon himself, which was superinduced or created by his own wrong, then the law justly limits his right of self defense, and regulates it according to the magnitude of his own wrong’ ” (quoting Reed v. State, 11 Tex.App. 509, 517-18 (1882))); Cf. Peterson, 483 F.2d at 1233 (“an affirmative unlawful act reasonably calculated to produce an affray foreboding injurious or fatal consequences [holding another at gunpoint] is an aggression which, unless renounced, nullifies the right of homicidal self-defense”) (footnote omitted).
In regard to an escalation of force instruction involving Stanley’s alleged defense of Colvin, Stanley had intervened in the fight between Werner and Colvin and Werner had been subdued and searched by Stanley. The issue for the members was simply whether Stanley was entitled to use deadly force in defense of the alleged subsequent knife attack by Werner against Colvin. R.C.M. 916(e)(5). That situation involved a classic self-defense of another situation and escalation of force was not “in issue.”
Our case law is clear — an affirmative defense is “in issue” when “some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.” Lewis, 65 M.J. at 87 (citations and quotation marks omitted).[4] *64 In this case, the military judge correctly concluded that self-defense was “in issue” because there was “some evidence” in the record which the members could rely upon if they chose. He properly provided detailed self-defense instructions but did not instruct on the principle of escalation of force because the record lacked any evidence that would trigger his duty to provide such an instruction. In reviewing this case, we agree with the conclusion of the United States Court of Appeals for the District of Columbia in Parker v. United States, 158 F.2d 185 (D.C.Cir. 1946), when it held:
[The self-defense instruction], we think, went as far as appellant could ask, and, together with instructions as to reasonable doubt and presumption of innocence, fairly left to the [members] the question whether the evidence as a whole was sufficient to show that the fatal wound was or was not inflicted in self defense.
Id. at 186 (footnote omitted). Having found no error, we need not address the CCA’s analysis concerning prejudice.

Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed except as to the findings of guilty to Charge VI and its specification and the sentence. The portion of the decision of the Court of Criminal Appeals affirming Charge VI and its specification and the sentence is vacated. The record is returned to The Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further consideration in light of United States v. Fosler, 70 M.J. 225 (C.A.A.F.2011).

. We granted review of the following issue:
Whether the military judge's instructions on self-defense were incorrect and incomplete, and if so, whether the lower court erred in concluding that this constituted harmless error.
United States v. Stanley, 70 M.J. 36 (C.A.A.F. 2011) (order granting review). We also specified an issue regarding the Article 134, UCMJ, adultery offense in view of our decision in United States v. Fosler, 70 MJ. 225 (C.A.A.F.2011). United States v. Stanley, 70 M.J. 270 (C.A.A.F. 2011) (order granting review). The specified issue is addressed in the decretal paragraph.

. Stanley repeatedly testified as to the rapidity of the events at the farmhouse using such words as "super fast,” "extremely fast,” "really fast," "split second,” and "instantly.” Moreover, there is nothing in Stanley’s rendition of the facts that supports a theory that this fast moving, chaotic affray was a series of discrete altercations.

. Compare, e.g., United States v. Moore, 15 C.M.A. 187, 194, 35 C.M.R. 159, 166 (1964) (“one is not per se deprived of the right to act in self-defense by the fact that he has armed himself and again sought out his assailant”), and United States v. Black, 12 C.M.A. 571, 575, 31 C.M.R. 157, 161 (1961) (“whether an accused, by resort to a weapon, uses excessive force in repelling an assault upon him is dependent upon all of the circumstances”), with R.C.M. 916(e)(1)-(4) (providing limitations on the use of force in self-defense), and 2 LaFave § 10.4(a).

. We recognize that both Lewis and Dearing were decided after Stanley's trial. However, both *64 cases find a basis in Cardwell. Lewis, 65 M.J. at 88; Dealing, 63 M.J. at 483. Thus, this case does not present a matter of new law, but rather the application of existing law.