CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant DAVID D. BRAM**
**United States Army, Appellant**

ARMY 20111032

Headquarters, I Corps
Kwasi Hawks, Military Judge (arraignment)
David L. Conn, Military Judge (trial)
Lieutenant Colonel John T. Rothwell, Acting Staff Judge Advocate

For Appellant: Captain Aaron A. Inkenbrandt, JA (argued); Major Vincent T. Shuler, JA; Captain Aaron A. Inkenbrandt, JA (on brief).

For Appellee: Captain Timothy C. Erickson, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Sean Fitzgibbon, JA; Captain Timothy C. Erickson, JA (on brief).

29 September 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of conspiracy to commit assault and battery, failure to obey a general order, dereliction of duty, maltreatment of a subordinate, assault consummated by battery, obstruction of justice, and solicitation of another to commit murder, in violation of Articles 81, 92, 93, 128, and 134 of the Uniform

Code of Military Justice, 10 U.S.C. §§ 881, 892, 893, 928, and 934 (2006) [hereinafter UCMJ].[1]

The panel sentenced appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

This case is before us for review under Article 66, UCMJ. Appellant raises two assignments of error. We find one issue merits discussion but no relief. We find those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), to be without merit.

## BACKGROUND

In July 2009, appellant was deployed to southern Afghanistan as an infantry squad leader. His Stryker unit was assigned to a forward operating base in Kandahar Province in a highly kinetic area where his unit operated at a high-paced operational tempo, including daily patrols in the region.

Appellant and his unit were frequently attacked during their patrols with improvised explosive devices (IED) set up by the enemy along highly traveled routes. Some members of appellant's platoon sustained life-threatening injuries as a result of IED attacks. IEDs were a source of great concern and anxiety for appellant's unit. Over time, appellant and his fellow unit members grew increasingly more frustrated with their inability to adequately address the problem.

Related to the IED problem was the enemy's suspected use of men on motorcycles to emplace and trigger IEDs as well as to monitor U.S. patrol movements. The Stryker unit's standard operating procedure to handle suspicious fleeing vehicles was to fire pin flares and warning shots in the direction of the vehicle and attempt to stop it and question the passengers as to their identity and search the vehicle and passengers for contraband.[2] If the fleeing vehicle displayed hostile intent or committed hostile acts, then deadly force was authorized. Motorcycles were typically able to avoid being stopped and inspected given their speed and evasive nature. On at least one occasion, however, appellant's platoon interdicted evading motorcyclists who were found to be in possession of IED-

---

[1] Appellant was acquitted of one specification of Article 134, UCMJ, which alleged he wrongfully placed an AK-47 magazine next to the corpse of an Afghan male, and one specification of Article 128, UCMJ, assault consummated by battery.

[2] Corrected

making materials. In that case, the fleeing motorcyclists were determined to be enemy combatants.

At trial, the government contended that appellant solicited two soldiers to join his plan to confront the issue of the unit's difficulty capturing fleeing motorcyclists. The government's theory was that appellant's plan was to target any motorcyclist they encountered who drove away from U.S. forces. Specifically, the government alleged appellant solicited his Stryker vehicle commander, Specialist (SPC) Q, to shoot and kill the next fleeing motorcyclist with his .50 caliber machine gun, after which the Stryker team would quickly drive to the engaged target's location, creating a concealing "trail of dust," and plant an AK-47 rifle on the target to make the shooting "look legitimate."[3] More specifically, the specification alleged the plan was to, "make it appear as if the noncombatant was an enemy combatant."

One of the soldiers, SPC Q, with whom appellant discussed his plan, testified appellant intended to execute this plan regardless of whether or not the motorcyclists were armed or posed a threat, the only engagement criteria being that "they were running from us."

The other soldier appellant informed of his plan, Corporal (CPL) M, testified his understanding was that appellant intended this "staged scenario" to occur regardless of whether the motorcyclist posed a threat or whether positive identification was established.

At trial, appellant's defense was that the solicitation to kill a noncombatant motorcyclist and plant the AK-47 on his body did not occur at all and that SPC Q and CPL M fabricated the alleged conversations with appellant.

Appellant was found guilty, inter alia, of solicitation to commit murder, a violation of Article 134, UCMJ. The military judge instructed the panel that the elements of the charged offense were:

> (1) Appellant wrongfully solicited SPC Q to commit murder of Afghan noncombatants by shooting the next Afghan noncombatant they encountered with their .50 cal machinegun and then planting a weapon on the noncombatant to make it appear as if the noncombatant was an enemy combatant.

---

[3] An Afghan National Police AK-47 rifle and two ammunition magazines were being stored in appellant's Stryker vehicle. These items had been improperly taken from an IED blast site and hidden in the vehicle.

(2) That appellant intended SPC Q to commit murder of an Afghan noncombatant.

(3) That under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces.

## LAW AND DISCUSSION

*Whether the Military Judge Erred in Failing to*
*Instruct Panel Members on a Special Defense*

On appeal, appellant generally argues the military trial judge erred in failing to instruct the panel, *sua sponte*, on special defenses reasonably raised by the evidence, namely justification and mistake of fact.[4] Specifically, appellant alleges that the evidence at trial established that the target to be killed was believed by appellant to be a member of the Taliban capable of detonating an explosive device against U.S. forces and the military judge's failure to instruct on the special defenses of mistake of fact and justification violated appellant's due process rights. We disagree with appellant's assigned error.

Allegations of mandatory instruction errors are reviewed under a de novo standard of review. *United States v. Bean*, 62 M.J. 264, 266 (C.A.A.F. 2005); *United States v. Forbes*, 61 M.J. 354, 357 (C.A.A.F. 2005).

A military judge is required to instruct the members on affirmative defenses "in issue." Rule for Courts-Martial [hereinafter R.C.M.] 920(e)(3). A matter is considered "in issue" when "some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they choose." R.C.M. 920(e) discussion. Notwithstanding the waiver provisions of R.C.M. 920(f), failure to request an instruction required by R.C.M. 920(e)(3) or to object to their omission does not waive the error. *United States v. Stanley*, 71 M.J. 60, 63

---

[4] R.C.M. 916(j) provides, "Except as otherwise provided in this subsection, it is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense. If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused. If the ignorance or mistake goes to any other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under all the circumstances. However, if the accused's knowledge or intent is immaterial as to an element, then ignorance or mistake is not a defense."

(C.A.A.F. 2011). "[A] military judge has wide discretion in choosing the instructions to give, but has a duty to provide an accurate, complete, and intelligible statement of the law."[5] *United States v. Behenna*, 71 M.J. 228, 232 (C.A.A.F. 2012); *see also United States v. Wolford,* 62 M.J. 418, 419 (C.A.A.F. 2006). Appellant argues that a justification and mistake of fact instruction should have been given to the panel.

We turn to whether there was "some evidence" to support instructions on either of the two defenses.

The justification defense is interrelated with the offense of solicitation in that the conduct being solicited must itself constitute a crime and, therefore, be without legal justification.[6] In this case, the solicited crime was murder, which includes the element that the killing be wrongful. There was no contention at trial that the immediate killing of a properly labeled noncombatant would not constitute murder.

Solicitation is a specific intent offense. *United States v. Mitchell,* 15 M.J. 214, 216 (C.M.A. 1983). Although the mens rea requirement is classified as one of specific intent, all that is required, generally speaking for commission of this offense is that the solicitee understand he is being recruited into some criminal enterprise. *United States v. Taylor*, 23 M.J. 314 (C.M.A. 1987).

Appellant's plan, as described by the witnesses, was to indiscriminately target the next motorcyclist they encountered who drove away from them. The evidence established appellant knew the proper procedures for dealing with fleeing military-age males on motorcycles including the use of pin flares and warning shots and not the use of immediate deadly force.

Appellant's plan also shows a lack of an honest belief that the targets were legitimate as well as a lack of reasonableness. Corporal M and SPC Q testified that appellant wanted to "stage" an engagement using the AK-47 as a drop weapon. One can infer bad faith if appellant intended a "trail of dust" to be created after the engagement to conceal the true nature of the activity that had just occurred. Appellant's use of the planted AK-47 to "legitimize the reason why they had to shoot them" indicates appellant was operating under the presumption that the targets were not legitimately being engaged because they posed a threat to U.S. forces.

---

[5] Corrected

[6] R.C.M. 916(c) "Justification" provides, "A death, injury, or other act caused or done in the proper performance of a legal duty is justified and not unlawful."

BRAM—ARMY 20111032

The thrust of appellant's defense at trial regarding the solicitation charge was simply that it did not happen and the two soldiers who testified against appellant were fabricating the story to obtain leniency from the government in their own cases. As such, appellant did not request a mistake of fact or justification instruction. While appellant's defense at trial and his failure to request the instruction at trial are not dispositive factors in the analysis, the evidence presented at trial did not raise the mistake of fact or justification defenses making them "at issue." No witness attempted to justify appellant's plan by suggesting that it was lawful because appellant operated under a mistake of fact or with legal justification. Rather, the evidence indicated appellant, out of anger and frustration, wanted to indiscriminately engage motorcycle riders regardless of whether or not they posed a threat to U.S. forces.

Further, the government charged appellant with solicitation of another to murder an "Afghan noncombatant" and then plant an AK-47 to make it "appear as if the noncombatant was an enemy combatant." Based on the language of the charge itself, the defenses of justification and mistake of fact are not implicated if the target is properly understood by all concerned to be a noncombatant. Otherwise stated in the alternative, soliciting a soldier to kill a combatant not only implicates certain defenses, it would indicate the lack of a crime altogether.

Hence, under the facts of this case, we do not find that the evidence reasonably raised either the defense of mistake of fact or justification requiring the judge's instruction. Thus, we find no instructional error occurred in this case.

**CONCLUSION**

On consideration of the entire record and the assigned errors, the findings and sentence as approved by the convening authority are AFFIRMED.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6