# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**F.D. MITCHELL, J.R. MCFARLANE, M.C. HOLIFIELD**
**Appellate Military Judges**

## UNITED STATES OF AMERICA

v.

## DANIEL D. WILT
## SONAR TECHNICIAN THIRD CLASS (E-4), U.S. NAVY

### NMCCA 201300274
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 13 December 2012.
**Military Judge:** CDR Colleen Glaser-Allen, JAGC, USN.
**Convening Authority:** Commander, Navy Region Mid-Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CDR S.J. Gawronski, JAGC, USN.
**For Appellant:** Maj Jason Wareham, USMC.
**For Appellee:** Maj David N. Roberts, USMC; LT Ann E. Dingle, JAGC, USN.

### 19 February 2015

---
### OPINION OF THE COURT
---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

MITCHELL, Chief Judge:

A general court-martial consisting of officer and enlisted members convicted the appellant, contrary to his pleas, of one specification of rape, two specifications of forcible sodomy, three specifications of assault consummated by a battery, and one specification each of kidnapping, obstructing justice, and wrongfully communicating a threat in violation of Articles 120, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C.

§§ 920, 925, 928, and 934. The appellant was sentenced to confinement for life with the possibility of parole and a dishonorable discharge. The convening authority (CA) waived automatic forfeitures for a period of six months. He otherwise approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed.

The appellant now alleges four assignments of error (AOE) and seven summary AOEs[1]:

(1) The trial counsel improperly asked the members to place themselves in the victim's shoes when arguing for a sentence;

(2) The military judge erred by stating when instructing the members that there was "generally no reason for reconsideration;"

(3) His sentence is inappropriately severe;

(4) The military judge erred in failing to dismiss a member for bias;

(5) His defense counsel were ineffective by failing to seek potentially exculpatory camera footage;

(6) His defense counsel were ineffective by failing to challenge two members who were both sexual assault victim advocates;

(7) The military judge erred in failing to give a consent or mistake of fact instruction on findings;

(8) His defense counsel were ineffective in advising him not to testify;

(9) His due process rights were violated when his members panel could convict and sentence him to life in prison without unanimous vote;

(10) The 207 days of post-trial processing prejudiced him; and,

---

[1] AOEs IV-IX are submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). AOEs IV-X were submitted as summary AOEs. AOE XI is a Supplemental AOE.

2

(11) He was prejudiced when the members of his court-martial were selected under a regional instruction that excluded personnel from the members' pool based on rank.

After reviewing the record of trial and the pleadings of the parties, we find that the court-martial order incorrectly lists the members' findings as to Charge III, Specification 1 and Charge IV, Specification 2 and will order corrective action in our decretal paragraph. We otherwise find the findings of guilty and approved sentence correct in law and fact, and no errors materially prejudicial to the substantial rights of the appellant were committed. Arts. 59(a) and 66(c), UCMJ.

**Factual Summary**

On 26 April 2012, the appellant and DC3 SR were stationed onboard the USS VELLA GULF (CG 72), which was underway at sea. After DC3 SR completed her watch around 0145, the appellant asked her to help him fix a leak. The appellant took her to a secluded part of the ship, grabbed her, covered her mouth, and began punching her in the head. She tried to bite him and fight back, and she screamed for help. However, no one else was in that area of the ship at that time of the morning. The appellant walked her to the access trunk and told her they "were going to go have fun." Record at 1041-42.

DS3 SR tried to wrestle free. The appellant wrestled back, tried to kiss her, and told her that he loved her, that he had looked at her Facebook, and that if she had kids, he would not do be doing this to her. During the struggle, he also choked her. The appellant pulled out a precision box cutter and told her that if she did not do what he said and did not "shut up," he would cut her body into pieces, that he had trash bags and weights, and that he would throw her overboard and no one would ever know. *Id*. at 1045.

She begged the appellant to "not make this last long." *Id*. at 1047. He then led her down a vertical ladder well into the depths of the ship. *Id*.; Prosecution Exhibit 10. The appellant then secured the hatch and told her that no one was going to know she was down there. He told her that he had planned on attacking another female Sailor in that space the night before but did not, so he had the room set up for her. He ordered her to undress, and she complied, taking off all of her clothing except for her socks. He undressed, grabbed her hand, and made her fondle his penis.

3

The appellant opened the door to a storeroom, where the deck and lighting were covered with trash bags.  In the storeroom, he put his penis inside of DC3 SR's mouth and told her to perform oral sex on him.  He then tried to insert his penis into her vagina.  When he could not, he told her to get on top of him, and she complied.  She did not consent to any of these acts; rather, she complied because she thought she had a better chance of making it out of that space alive if she did so.  He then got behind her and inserted his penis into her vagina and then her anus.  He then pulled out of her anus and ejaculated into her vagina.  He zip-tied one of her hands to the net that was in the overhead.  He left her in the space and dogged the doors behind him.  Coming into and out of the space, he eventually zip-tied her other wrist and then her feet and duct-taped her mouth.  The duct-tape was not very tight, so she could still converse with the appellant.

She then heard him sawing something.  When the appellant came back into the room, he started to get nervous and stated, "I knew I was going to be able to rape you.  But this next part, I--I don't know if I could do this."  Record at 1077.

He came back into the room wearing a trash bag that had holes for his head and his arms.  He rubbed the inner part of her thigh and told her that he was going to cut her there because that is where she would bleed the most.  He pulled out the box cutter and kept moving the blade in and out.

DC3 SR could tell the appellant was nervous, so she told him that she promised not to tell anyone.  He put his hand around her waist, and she kept repeating that she would not tell anyone.  He then told her that he was not going to murder her and that he needed to clean her up.  He cut the zip-ties leaving only one of her hands restrained.  She said she was cold, so he allowed her to put her underwear and bra back on and he put the plastic bag that was on him over her.  He told her that he would have killed her if he had not forgotten his hatchet.

The appellant left the space and then came back with water and a sponge and had DC3 SR wipe her vaginal and chest area twice.  He allowed her to get dressed, and he cleaned the trash bags, zip ties, and duct tape.  He said he would kill her if she told anyone.  He went behind a piece of machinery, pulled out a saw, and told her, "I was going to do this.  I was going to kill you tonight."  *Id.* at 1101.  He then retrieved a face shield and said, "I had everything together.  I was going to do this.  I

4

will kill you if you tell anybody." *Id*. She repeated that she would tell no one.

After they reached the top of the ladder well, he pulled out a dagger and said, "Don't do anything. Don't . . . try to run away. Don't try screaming. I'll kill you." *Id*. at 1103-04. He then told her to bring her clothes to be washed in twenty minutes and that he would be watching. She went to berthing and immediately reported the incident to another Sailor. She did not know the appellant, but remembered his last name from his name tape on his coveralls.

Although she did not specifically remember being cut by the blade of the box-cutter, DC3 SR's DNA was found on the edge of the blade of a box-cutter found at the scene of the assault.

Further facts relevant to the AOEs are developed below.

**Improper Argument**

In his first AOE, the appellant argues that the trial counsel committed plain error and prosecutorial misconduct in his sentencing argument when he improperly asked the members to place themselves in the victim's shoes and interjected his personal opinions into the case by the use of personal pronouns. We disagree.

A. *Background*

During presentencing, the trial counsel argued for a sentence of life with the possibility of parole. He argued, "[N]one of us in this room can really honestly say that when [the appellant] is released, that we will be safe. When I say, we, I'm talking about the public at large." *Id*. at 2240. He utilized the personal pronoun "we" and "us" on several occasions throughout his argument. He concluded:

> It concerns government counsel that we sentence in a vacuum. What I mean by that is the fact that when we come up with a sentence, in this environment, eight months later. It's easier for us because we have carpet, a bailiff, safety, people, time's passed, people have gone on with their lives. It's not as fresh.
>
> . . . .

5

How many hours did she have to sit there and look at the hatch and wonder, when he came back in, after he did [sic] to her, what he did?  How many hours did she have to sit there and stare at that hatch on the bag wondering, "Am I going to get out of here alive?"

So we ask you, when you come back in from the deliberation room and you give a just sentence, that please do it not in the pristine area of this [sic], Consider sitting where she was sitting in that hatch. So when a sentence is decided, we would be able to turn to then DC3 [SR] as she is sitting on those totes covered in plastic, zip-tied up, hoping not to die, we say, "This is the proper sentence in this case for what he did to you.  Just survive."

*Id*. at 2244-45.  During this argument, trial counsel showed the members a picture of the closed hatch door DC3 SR saw from the space where she was assaulted.  *Id*. at 2244; PE 17.  The defense did not object to the Government's presentencing argument.

B.  *Law*

The failure of the trial defense counsel to object to improper argument by the trial counsel constitutes forfeiture of the issue on appeal absent plain error.  RULE FOR COURTS-MARTIAL 1001(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  To show plain error, the appellant must persuade this court that: "'(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.'"  *United States v. Tunstall*, 72 M.J. 191, 193-94 (C.A.A.F. 2013) (quoting *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011)).  The plain error doctrine is "to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result."  *United States v. Causey*, 37 M.J. 308, 311 (C.M.A. 1993) (citations and internal quotation marks omitted).  "[T]he argument by a trial counsel must be viewed within the context of the entire court-martial.  The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'"  *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

1.  Interjecting Personal Opinions

It is improper for a trial counsel to interject himself or herself into the proceedings by expressing a personal belief or opinion as such is "a form of unsworn, unchecked testimony and

6

tend[s] to exploit the influence of his office and undermine the objective detachment which should separate a lawyer from the cause for which he argues." *United States v. Horn,* 9 M.J. 429, 430 (C.M.A. 1980). The appellant contends that the trial counsel in this case did so by using pronouns such as "we" and "I" during his presentencing argument. While the trial counsel did explain to the members that when he said "we" he was talking about the "public at large," he went on to express his personal concerns that members tend to sentence "in a vacuum." Record at 2240-45.

### 2. "Golden Rule" Arguments

"[M]embers are not to be asked to fashion their sentence 'upon blind outrage and visceral anguish,' but upon 'cool, calm consideration of the evidence and commonly accepted principles of sentencing.'" *Baer*, 53 M.J. at 237 (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)). "Golden Rule arguments asking the members to put themselves in the victim's place are improper and impermissible in the military justice system." *Id.* at 238. However, "asking the members to imagine the victim's fear, pain, terror, and anguish is permissible, since it is simply asking the members to consider victim impact evidence." *Id.* (citation omitted). The appellant contends that the trial counsel's statement during summation to "consider sitting where she was sitting in that hatch," Record at 2245, was tantamount to asking the member's to put themselves in the victim's place.

Assuming *arguendo* that the trial counsel's aforementioned comments and use of personal pronouns during his presentencing argument constituted error and that such error was "plain or obvious," taken in the context of the entire argument and the compelling evidence of the crimes committed by the appellant and their impact on his victim, we do not find them so inflammatory as to have materially prejudiced the appellant's substantial rights. Defense counsel's failure to object is indicative of the minimal impact the trial counsel's remarks made on the court members. Furthermore, we do not believe the trial counsel's words were so inflammatory as to activate the military judge's *sua sponte* duty to intervene and neutralize their impact. *Id.* at 238-39. We are convinced beyond a reasonable doubt that any error was harmless and that the appellant suffered no material prejudice to a substantial right. Accordingly, we find this assignment of error to be without merit.

3.  Prosecutorial Misconduct

Finally, with respect to the appellant's assertion that the trial counsel's presentencing arguments constituted prosecutorial misconduct, we note that prosecutorial misconduct is "action or inaction by a prosecutor in violation of some legal norm or standard." *United States v. Rodriguez-Rivera,* 63 M.J. 372, 378 (C.A.A.F. 2006) (citations and internal quotation marks omitted).  We find that the instances of argument cited by the appellant do not rise to the level of prosecutorial misconduct, either individually or cumulatively, and they merit no relief.  *See United States v. Doctor*, 21 C.M.R. 252, 261 (C.M.A. 1956) ("It is a little difficult for us to find misconduct which compels a reversal when it purportedly arises out of an argument which had so little impact on defense counsel that they sat silently by and failed to mention it . . . at the time of trial.").

**Military Judge's Instructions**

In his second AOE, the appellant argues the military judge erred by instructing the members on the merits that there was "generally no reason for reconsideration."  Record at 1974.  In his seventh AOE, he argues the military judge erred in failing to give a consent or mistake of fact instruction on findings.  We disagree with both assertions.

"Military judges have substantial discretionary power in deciding on the instructions to give." *United States v. Stanley*, 71 M.J. 60, 62 (C.A.A.F. 2012).  "We review the judge's decision to give or not give a specific instruction, as well as the substance of any instructions given, to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence." *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (citations and internal quotation marks omitted).  "Whether a panel was properly instructed is a question of law reviewed *de novo*." *United States v. Garner*, 71 M.J. 430, 432 (C.A.A.F. 2013) (citation and internal quotation marks omitted).

A.  *Consent and Mistake of Fact Instructions*

Before the defense rested their case, the military judge informed them that she did not believe there was enough evidence of consent or mistake of fact as to consent to warrant those instructions unless they presented testimony by the appellant on those issues.  The appellant did not testify.  After the close

8

of the evidence, the military judge heard argument on whether consent and mistake of fact as to consent instructions were warranted. The defense argued that the instructions were warranted because the victim claimed she did not know the appellant even though they worked in the same department for two weeks to three months, the injuries that the victim had were not consistent with the force she alleged, and the instructions would combat the Government's allegation of force. The military judge found that, although there was some evidence of the appellant and DC3 SR being in the same department, there was no evidence of anything more than that they "may have exchanged pleasantries." Record at 1854. As a result, the military judge found that "some evidence" of consent or mistake of fact as to consent was not presented at trial and did not give those instructions to the members. *Id*. at 1855, 1861-63.

Consent and mistake of fact as to consent are affirmative defenses in prosecutions under Article 120(c), UCMJ. Art. 120(r), UCMJ. "When an affirmative defense is raised by the evidence, an instruction is required." *McDonald*, 57 M.J. at 20. An affirmative defense is "'in issue' when 'some evidence, without regard to its source or credibility, has been admitted upon which members might rely if they chose.'" *Stanley*, 71 M.J. at 61 (quoting *United States v. Lewis*, 65 M.J. 85, 87 (C.A.A.F. 2007)).

Consent means "words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person." Art. 120(t)(14), UCMJ. Lack of resistance resulting from an appellant's placing the victim in fear does not constitute consent. *Id*. Mistake of fact as to consent means that "the accused held, as a result of ignorance or mistake, an incorrect belief that the other person engaging in the sexual conduct consented," and that belief must be reasonable. Art. 120(t)(15), UCMJ.

We agree with the military judge that consent and mistake of fact as to consent were not "in issue" under the facts of this case. At most, the evidence presented at trial showed the appellant and victim had limited professional interaction. No witnesses testified to knowledge of a personal relationship between the appellant and the victim. Having found no error, we need not address whether there was prejudice. *See Stanley*, 71 M.J. at 64.

9

B.  *Instructions on Reconsideration*

    While reading the standard instructions prior to findings, the military judge stated:

        You may reconsider any finding prior to its being announced in open court.  However, after you vote, if any member expresses a desire to reconsider any finding, the President of the court will tell the court that "a reconsideration has been proposed".  Do not state whether the finding proposed to be reconsidered is a finding of guilty or not guilty, or which specification and charge is involved.  I will then give you specific instructions on how to reconsider a finding.

        Okay, I'm going to be straight up with you about reconsideration.  There is generally no reason for reconsideration if you've had a really full and free discussion on the evidence before you.  So my advice to you is to have a full and free discussion about everything you've heard in the case.  You'll have a computer to look at the discs as far as the evidence and pictures.  You'll have all of the hard copy exhibits.  You'll have all of the physical evidence.

        Take the time to talk through the case and everything you've heard and take a look at the evidence if you like to, there's no requirement that you do that but if you have a question about something you heard or saw, take the time to look at it and talk about it. If you do those things I think you'll avoid any concerns about reconsideration.

Record at 1974-75.  The trial defense counsel did not object to the military judge's instructions on reconsideration.  The members deliberated for a little over two and a half hours and did not seek reconsideration during their deliberations.  Record at 1984-85; 1988-89.

    Failure to object to an instruction before the members close to deliberate constitutes forfeiture of the objection absent plain error.  R.C.M. 920(f).  To establish plain error, the appellant "must demonstrate that there was error, that the error was obvious and substantial, and that the error materially prejudiced his substantial rights."  *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999) (citation omitted).

10

Here, the appellant has demonstrated no clear, obvious errors by which he was prejudiced with regard to the military judge's additional instructions concerning reconsideration. As noted by our sister court, a "court-martial is not a scripted procedure but a dynamic event." *United States v. Cannon*, 39 M.J. 980, 983 (A.F.C.M.R. 1994). Military judges have the flexibility to speak outside of a set script in order to facilitate the needs of the courtroom. Military "judges are not mere robots; they are presumed to appreciate the law of the appellate courts, military or civilian, and the effect these decisions have on the matter then presently before them." *United States v. Warren*, 13 M.J. 278, 287 (C.M.A. 1982) (Fletcher, J., concurring). Here, the military judge instructed the members to carefully consider every matter presented to them, which could avoid the need for reconsideration. She additionally properly instructed the members that they could reconsider any finding before such finding was announced as required under R.C.M. 924. Accordingly, we do not find error.

**Sentence Appropriateness**

In his third AOE, the appellant contends that his sentence is inappropriately severe. The appellant argues that a sentence including no more than thirty years of confinement is appropriate in his case.[2] We disagree.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

This case involves multiple crimes that were perpetrated upon a shipmate onboard a warship deployed at sea. The crimes were premeditated, extended over a period of hours, and gravely

---

[2] The appellant also argues that his sentence is disparate from sentences in cases involving similar misconduct. We find this argument to be without merit. In raising the issue of sentence disparity, the appellant has the burden of "demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). To be closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R. 1994). The appellant failed to meet this burden.

impacted the victim and the crew.  At least two witnesses and DC3 SR testified that she was not the same person after the assault: she was scared to be alone and was anxious.  She woke up to the slightest noises at night, had nightmares, and feared black trash bags.  Her relationship with her boyfriend was negatively impacted, and she no longer trusted men or felt comfortable engaging in a normal romantic relationship.  She went to individual and group therapy after the incident. Her greatest fear was the appellant's release, which would enable him to follow through with his threat to kill her or to attack someone else.

The assault significantly impacted the crew's morale and left them unfocused.  Some female Sailors began carrying knives for protection.  DC3 SR's division was also negatively impacted. She left the ship without a relief, leaving the Damage Control Department with fewer people to accomplish its mission.

In mitigation and extenuation, the defense presented evidence that the appellant had been a hard-working Sailor with good military bearing and no conduct issues prior to this incident.  The appellant has two minor children with special health needs.  His daughter was born while he was deployed, so he had not met her at the time of trial.  As a result of the appellant's family's circumstances, the members recommended and the CA granted appellant's request that automatic forfeitures be paid to the appellant's dependents for a period of six months.

On balance and after considering the entire record, given the heinous nature of the appellant's offenses, we find life imprisonment with the possibility of parole and a dishonorable discharge to be appropriate for this offender and his offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. Accordingly, we decline to grant relief.

### Challenges of Members

The appellant next claims that the military judge abused her discretion by denying the defense challenge for cause against a Lieutenant Commander (LCDR) P, who had previously been a victim of an assault at knifepoint.  We disagree.

We will not overturn a denial of a challenge for cause unless there is "a clear abuse of discretion by the judge in applying the liberal-grant policy." *United States v. Napolitano*, 53 M.J. 162, 166 (C.A.A.F. 2000) (citation omitted).

12

"Actual and implied bias are 'separate legal tests, not separate grounds for challenge.'" *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting *United States v. Armstrong*, 54 M.J. 51, 53 (C.A.A.F. 2000)). We give great deference to the military judge "when deciding whether actual bias exists because it is a question of fact, and the judge has observed the demeanor of the challenged member." *Napolitano*, 53 M.J. at 166 (citation omitted). "Less deference is given to the military judge's determination when this Court is reviewing a finding on implied bias because it is objectively 'viewed through the eyes of the public.'" *Id.* (quoting *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999)).

Considering the record as a whole, we find that the appellant did not establish that grounds for challenge against LCDR P based on implied or actual bias existed. LCDR P's situation was factually different from this case: LCDR P was in a foreign country and was approached by young men with a knife. He then took his money out of his wallet, threw it, and walked the other way. The men did not follow him, and there was no physical contact. Further, during *voir dire*, LCDR P demonstrated his willingness to judge the appellant's case based on the evidence presented at trial in accordance with the military judge's instructions and understood that the burden was not on the appellant to prove his innocence. Record at 334, 362, 389. As the military judge adhered to the proper legal tests for actual and implied bias, utilizing the liberal grant mandate, we find no abuse of discretion by the military judge. *See Clay*, 64 M.J. at 277.

### Ineffective Assistance of Counsel

AOEs 5, 6, and 8 pertain to the appellant's claims of ineffective assistance of trial defense counsel made for the first time on appeal. He argues his defense counsel were ineffective by failing to seek potentially exculpatory camera footage, failing to challenge two members who were trained as sexual assault victim intervention representatives, and advising the appellant not to testify. The appellant did not provide an affidavit or any other support for his assertions.

A military accused is entitled to the effective assistance of counsel. Art. 27(b), UCMJ; *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007). The court "looks at the questions of deficient performance and prejudice de novo." *United States v. Gutierrez*, 66 M.J. 329, 330-31 (C.A.A.F. 2008) (citations omitted).

We analyze the appellant's claim of ineffective assistance of counsel under the test outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted).

Trial defense counsel enjoys a strong presumption that he or she "was competent, rendered adequate assistance at trial, and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Lowe*, 50 M.J. 654, 656 (N.M.Ct.Crim.App. 1999) (citations omitted). Courts of appeal normally should not "second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000) (citation omitted).

In this case, the appellant and his trial defense counsel made a tactical decision not to have the appellant testify in his own defense. That this was a deliberate choice and not the result of oversight was specifically stated on the record. Record at 1824-26.

Based on our careful analysis of the record, we find that the appellant has failed to meet his burden of establishing a "factual foundation for [his] claim of ineffective representation[,]" *Grigoruk*, 52 M.J. 315, and has failed to meet the threshold for compelling defense counsel to explain their actions, *United States v. Lewis*, 42 M.J. 1 (C.A.A.F. 1995). Because the appellant's post-trial submission alleges facts that even if true would not result in relief, we reject his claim on that basis and need not order a post-trial evidentiary hearing. *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

In sum, the appellant's ineffective assistance of counsel assertions constitute nothing more than bare allegations and speculation concerning his trial defense counsel's claimed errors and omissions. The record supports that the trial defense counsel team rendered adequate assistance and exercised reasonable professional judgment in the pretrial, trial, sentencing and post-trial representation they provided to the appellant. In light of the evidence in the record and the appellate filings, we conclude the appellant has demonstrated neither deficient performance nor prejudice.

14

**Non-Unanimous Voting and Due Process**

In his ninth AOE, the appellant argues his due process rights were violated when his members' panel could convict and sentence him to life in prison without a unanimous vote. We disagree.

Because the death penalty was not mandatory for any of the appellant's charged offenses, a two-thirds vote by his seven-member panel, and not unanimity, was the minimum required to convict him of any charged offense. Art. 52(a)(2), UCMJ; R.C.M. 921(c)(2)(B). A three-fourths vote by the panel was the minimum required to convict the appellant of a sentence of life imprisonment. Art. 52(b)(2), UCMJ. The military judge properly instructed the members on these voting requirements. A non-unanimous voting requirement is constitutional in the appellant's case. *See United States v. Viola*, 26 M.J. 822, 830 (A.C.M.R.), *aff'd*, 27 M.J. 456 (C.M.A. 1988); *United States v. Guilford*, 8 M.J. 598, 601-02 (A.C.M.R. 1979) (finding the Supreme Court has "expressly eschewed any intimation of its views as to the constitutionality of non-unanimous verdicts rendered by juries of more than six members"). Therefore, we find this AOE to be without merit.

**Post-Trial Delay**

The appellant also argues he has been denied speedy post-trial review because it took 207 days from the date of trial to the date of the CA's action. We additionally note that completion of appellate review exceeded the 18-month guideline outlined in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Appellate review in this case was completed in nineteen months and two days, which triggers the four-part analysis set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and a presumption of unreasonable delay. *Moreno*, 63 M.J. at 142. The four-part *Barker* analysis includes: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citations omitted).

We find this case has "present[ed] specific circumstances warranting additional time, thus making [the timeframe of post-trial action and appellate review] reasonable upon assessment of the *Barker* factors." *Id.* at 143. Delay in post-trial processing was caused by substantial errors in the transcription of several sections of the record, requiring hours of rework by the military judge, who also had a substantial caseload during that timeframe. The record of trial contains over 2,200 pages

15

of transcribed record and approximately 1,500 pages in exhibits. After the record of trial was authenticated on 14 May 2013, trial defense counsel requested, and the CA granted, an additional twenty days to submit clemency matters. The serious nature of the case and the sentence the appellant received warranted additional time to prepare matters in clemency. The defense submitted clemency on 13 June 2013. The staff judge advocate completed her recommendation (SJAR) on 19 June 2013 and served it on defense counsel that same day. The defense counsel signed for receipt of the SJAR on 20 June 2013 and did not submit further clemency. The addendum SJAR was completed on 8 July 2013, and the CA took action the same day. We note that the CA, as a matter of clemency matters, deferred the automatic reduction in rate and automatic forfeitures from the date they would have become effective until the date he took his action, and also waived automatic forfeitures for a period of six months from the date of his action.

Concerning appellate review, we note that this case was complicated and resulted in eleven AOEs. Appellate defense requested and was granted five enlargements of time to file his initial brief and was granted leave to file a supplemental AOE, which resulted in the defense having the case for seven of the nineteen months of appellate review. The Government's brief was filed with this court on 16 June 2014. After the defense received another enlargement of time, their reply brief was filed on 2 July 2014.

During the appellate review process, the appellant did not file a motion to expedite appellate review until 12 February 2015 and the appellant's consent to the three enlargements of time filed by the Government is noted in those motions. The appellant's sentence was and remains, after our appellate review, life imprisonment with the possibility of parole. As such, he has suffered no prejudice by these delays.

Accordingly, we hold the delays in this case, the 207 days it took to transcribe, authenticate, and take action on the record, and the nineteen months it took to complete the appellate review process, were "justifiable, case-specific delays supported by the circumstances of th[is] case and not delays based upon administrative matters, manpower constraints or the press of other cases." *Moreno*, 63 M.J. 129.

Furthermore, if we were to determine that there was a denial of due process due to the post-trial processing of the case, we would also find that the denial was harmless beyond a reasonable doubt. *United States v. Allison,* 63 M.J. 365, 370-71

16

(C.A.A.F. 2006).  The appellant has not identified, nor do we find, any harm from the delays in this case.  The appellant has not suffered "oppressive incarceration pending appeal[;]" he has not shown, or even alleged, he has suffered any "particularized anxiety or concern" related to the delays, distinct from the anxiety and concern normal for persons awaiting appellate decisions; and "his incarceration was not lengthened by the delay and he is in no worse position due to the delay."  *See United States v. Toohey*, 63 M.J. 353, 361 (C.A.A.F. 2006) (citations omitted).  Consequently, we find the delays in this case are harmless beyond a reasonable doubt.

## Panel Member Selection

In his final assignment of error, the appellant avers that he was prejudiced when the members of his court-martial were selected under a regional instruction that *per se* excluded personnel from the members' pool based on rank.  We disagree.

In June of 2002, Commander, Naval Region Mid-Atlantic issued an instruction to subordinate commands establishing the procedure for nominations of prospective court-martial members.  That instruction directed each subordinate command, except for one, to provide a certain number of nominees in the ranks of E-6 and above.  The instruction only called for three nominees below E-6 from one command.

The standard of review for the proper selection of a court-martial panel is *de novo.  United States v. Kirkland*, 53 M.J. 22, 24 (C.A.A.F. 2000).  We look at three primary factors to determine whether an impermissible member selection has taken place:

1. Improper motive in packing a member pool;
2. Systematic exclusion of potential members based on rank or other impermissible variable; and,
3. Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community.

*United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004).  If either of the first two criteria is present, the process is impermissible.  *Id.*  These criteria are not only considered in the actual panel selection process, but also in the process of presenting nominations to the CA.  *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper

17

exclusion. *Kirkland*, 53 M.J. at 24. Once improper exclusion has been established, the burden is placed on the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

Assuming arguendo that junior enlisted service members were impermissibly excluded from the member selection process by virtue of their rank, the question remains whether that improper nomination process materially prejudiced the appellant. In reviewing this case we find:

(1) No evidence that the errant instruction was issued with an improper motive;

(2) No evidence that the CA had an improper motive when detailing the members assigned to the appellant's court-martial;

(3) The CA was a person authorized to convene a general court-martial;

(4) The CA was properly advised of his Article 25 responsibilities and that he could pick any member of his command, not just those who had been nominated;

(5) The court members were personally chosen by the CA from a pool of eligible candidates;

(6) The court members all met the criteria in Article 25, UCMJ;

(7) The instruction only limited some E-5's and E-4s junior to the appellant from consideration in this case because the appellant was an E-4 and members have to be senior to the accused; and,

(8) The members were selected after a rigorous *voir dire* process wherein the military judge granted several defense challenges for cause.

Under these circumstances, we are convinced that the appellant's case was heard by a fair and impartial panel and that the error in this case was harmless. *See United States v. Bartlett*, 66 M.J. 426, 431 (C.A.A.F. 2008).

### Promulgating Order

Although not raised as an AOE, the promulgating order in this case does not accurately list two of the charges and

18

specifications of which the appellant was convicted.  As to Charge III, Specification 1, the appellant was charged with an aggravated assault but was convicted of the lesser included offense of assault consummated by a battery.  However, the promulgating order states that the appellant was convicted of the aggravated assault.  The promulgating order also does not correctly list the exceptions and substitutions found by the members under Charge IV, Specification 2.

We test this error under a harmless error standard.  *United States v. Crumpley*, 49 M.J. 538, 539 (N-M.C.C.A. 1998).  We are convinced that this scrivener's error did not amount to plain error materially prejudicing appellant's substantial rights because no prejudice was alleged or is apparent.  *See Id.*  However, the appellant is entitled to have his official record correctly reflect the results of his court-martial.  *See Id.*  We therefore order corrective action in our decretal paragraph.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.  We direct that the supplemental court-martial order correctly state that the appellant was convicted of the lesser included offense of assault consummated by a battery under Charge II, Specification 1 and reflect the exceptions and substitutions the members found under Charge IV, Specification 2.

Senior Judge MCFARLANE and Judge HOLIFIELD concur.

For the Court

R.H. TROIDL
Clerk of Court

19